[No. F015206. Fifth Dist. Jan. 14, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MATTHEW FRITCHEY, Defendant and Appellant.

**COUNSEL**

Jeffry Glenn, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Edmund D. McMurray and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HARRIS, J.—**

### STATEMENT OF THE CASE

On October 1, 1990, an information was filed in Tulare County Superior Court charging appellant Joseph Matthew Fritchey with count I, grand theft of personal property (Pen. Code, § 487, subd. 1); and count II, possession of burglar's tools (Pen. Code, § 466).) Appellant pleaded not guilty.

On December 3, 1990, appellant withdrew his plea and pleaded no contest to both counts. On January 2, 1991, appellant appeared for sentencing. As to count I, the court suspended imposition of sentence and placed appellant on probation for a term of 3 years under the following conditions: service of 230 days in county jail; payment of $400 restitution to the State Restitution Fund; payment of a $400 restitution fine pursuant to Government Code

section 13967, stayed during term of probation and permanently thereafter; and forfeiture of appellant's truck to the county to be sold at auction after appeal, with the proceeds to be applied toward storage fees and a county fine.[1]

On January 8, 1991, appellant filed a timely notice of appeal.

### STATEMENT OF FACTS

The facts underlying the charged offense are not in dispute. At approximately 3 a.m. on September 7, 1990, John Berglund was awakened at his Dinuba residence by a metallic noise in his driveway. Berglund kept two jet skis, valued at $4,600 each, on a trailer in his driveway. The jet ski trailer was chained to his boat trailer. Berglund looked out his bedroom window to check the jet ski trailer and thought that he might have forgotten to lock the chain. He stepped outside and saw a piece of broken chain, and realized that someone might be there. Berglund noticed a small black pickup truck drive by his house, turn around, return to his house, and park in the street. Berglund went inside, asked his wife to call the police, and then picked up his gun and headed to the driveway.

When Berglund went outside, he saw appellant and another man holding the front of the jet ski trailer and pulling it out of the driveway toward the truck. Berglund confronted the men, announced that he had a gun, and ordered them to drop the trailer. The men dropped the trailer and started back toward their truck. Berglund ordered them to stop, but they refused. Berglund pointed the gun at the ground, fired it, then raised it toward the men and again ordered them to stop. Appellant began to come toward Berglund. Berglund again ordered him to stop, but when he refused Berglund fired a second shot at the truck tires. Both men finally stopped, and Berglund ordered them to the ground and waited for the police to arrive.

Appellant and Ronald Nix were arrested. Police officers discovered several tools inside appellant's black Nissan pickup truck: a bolt cutter, a slim-jim (used to open locked vehicles), a gravity knife, and a butterfly knife. Both men were charged with grand theft and possession of burglar's tools. Appellant initially pleaded not guilty, but changed his plea to no contest to count I.

---

[1]The reporter's transcript and the plea form indicate that appellant pleaded no contest to both counts I and II. However, the minute order of the change of plea hearing and the abstract of judgment indicate a plea and sentence as to count I only. The report of the probation officer states that count II was to be dismissed at the sentencing hearing. The record is silent as to any dismissal of count II. Upon remand, the trial court shall clarify its disposition as to this count.

In the probation report, appellant stated that he was not trying to steal the jet skis, but just wanted to test the weight of the trailer tongue. Mr. Nix, however, stated that Fritchey planned the crime in order to use Berglund's jet skis to supply parts on Fritchey's own jet ski. Mr. Berglund stated that during the incident he feared he would be attacked by appellant and that both men should receive substantial incarceration for their criminal activity. Berglund further stated he "suffered no loss as a result of this crime." The probation report stated that appellant owned a jet ski, valued at $2,000, which had an encumbrance of $1,000. Appellant also owned the 1985 Nissan pickup truck observed at Berglund's house, which was valued at $3,000, free of any encumbrance. Appellant had resigned his part-time job as a security guard. Appellant did not have a criminal record, but the probation report noted that he stood to realize substantial financial gain from the crime, and recommended restitution commensurate with the potential monetary gain. A probation period of 3 years was recommended on condition of service of 270 days local time, with a $400 restitution payment to the State Restitution Fund, and a $400 restitution fine pursuant to Government Code section 13967, to be stayed pending the successful completion of probation.

On January 2, 1991, a sentencing hearing was held before Judge Broadman. Judge Broadman indicated at the outset that he intended to follow the probation report "except as to the economical aspect." Defense counsel requested reduction of the offense to a misdemeanor because of the lack of a prior record. Referring to appellant's statement that he only wanted to test the weight of the trailer tongue, the court replied: "He doesn't even think he's guilty. When I first read the probation report I thought, well, heck, why don't we have this guy just go to trial." Defense counsel noted that the purpose of a no contest plea was to adjudicate the case without an admission of guilt to get the benefit of a plea bargain. The court disagreed: "But once he pled and it was time to talk to probation officer, it would seem it was time to come clean rather than come up with—it really wasn't one of the most amazing stories. It was one of the stupidest stories." The court declined the request to reduce the charge. Defense counsel also objected to the probation condition requiring mental health counseling. The court responded that appellant's story "was so incredible, anyone would think that someone who could believe that story probably needed mental health counseling."

Defense counsel also requested that appellant receive the same local time as the other defendant and the return of the butterfly knife recovered in the pickup truck by the police because it was very expensive. The court replied, "I got to tell you by the time this sentencing is over that knife is the least of your problems." The probation officer requested the court to follow the recommendation of the probation report.

The court inquired of appellant as to the location of his "paid for Nissan pickup truck" and the pink slip. Appellant replied that the truck was at his house and his mother held the pink slip in Dinuba. The court declined to give the same local time sentence as Nix because of appellant's threatening conduct toward the victim, and added another condition of probation:

"THE COURT: . . . But you were going to steal this guy's Ski Doo [jet ski]. So when I woke up this morning and I started thinking about what I was going to do this morning I started thinking about taking away your Ski Doo. But then I thought I'm not going to take away his Ski Doo because his has a lien on it for a thousand bucks, and it's only worth two thousand dollars. So I'm not going to take away your Ski Doo because that will screw up somebody else.

"But the thing that hurts most is to take away your paid for pickup truck. Just like you were going to steal that guy's Ski Doo, we're going to take away your pickup truck. And that way you'll understand what it's like to have something like that stolen from you.

"Do you have a particular charity which you'd like to give your pickup truck to?

"THE DEFENDANT: Your Honor, instead of giving my truck away I would do prison time. That's the only vehicle I've got.

"THE COURT: You've got it. How many years do you want to do?

"MR. PEREIRA: Your Honor, could I communicate with my client for a minute?

"THE COURT: Yeah. I think that I might have hit upon what really hurts you."

Mr. Pereira, defense counsel, suggested imposition of a fine rather than confiscation of property: "I think that's not constitutional to confiscate property when it's not been used in the commencement [sic] of a crime." The court replied that it was willing to impose a prison sentence if appellant rejected the conditions of probation, and that such conditions only needed to be reasonably related to his rehabilitation and to the crime that was committed.

Mr. Pereira indicated appellant would accept probation and appeal the conditions. The court ordered the vehicle stored pending appeal, and defense counsel requested the county to cover the storage expenses. The court ordered appellant to go to Dinuba immediately after the hearing, get the truck and deliver it to his bailiff.

"THE COURT: The basis for this, so that the record is real clear, is that you were going to steal this guy's Ski Doo, which had a value of nine thousand dollars. The thing that is appropriate for you is that, as you indicated quite clearly, your pickup is a very valuable thing to you. And in terms of the punishment fitting the crime, I cannot think of anything more appropriate than this.

"And I could fine you three thousand dollars, which is the value of the pickup, but that doesn't get to the essence of the punishment. And I think that this does. And in terms of rehabilitation, I think it's appropriate. . . ." The court suspended imposition of sentence and placed appellant on probation for 3 years on condition of service of 230 days in county jail. He was also ordered to pay restitution in the amount of $400 to the State Restitution Fund and a $400 restitution fine pursuant to Government Code section 13967. The latter restitution amount was stayed pending successful completion of the probation period. "As additional punishment, your vehicle is ordered forfeited, to be given to a charity of your choice. If you have no choice—does he want to opt for a choice? Pick the Battered Women's Shelter?"

Defense counsel rejected any such option because of his objection to the condition and the anticipated appeal. Instead, the court ordered the sale of the truck at the next county auction after the appeal, with the proceeds applied to storage fees and the remainder paid as a fine to Tulare County. The court ordered appellant to surrender the pink slip within 30 days to be held in the court's file pending appeal. The court granted the defense motion to return the knife to appellant.

On appeal, Fritchey contends that forfeiture of his truck was an improper condition of probation. He also challenges the court's imposition of restitution.

DISCUSSION

I.

THE COURT IMPROPERLY ORDERED THE FORFEITURE OF
APPELLANT'S TRUCK.

Appellant contends that the court improperly ordered the forfeiture of his truck as a condition of probation. A grant of probation is not a matter of right, but an act of clemency designed to allow rehabilitation. ▮ The grant or denial of probation rests in the sound discretion of the court. (*People v. Chandler* (1988) 203 Cal.App.3d 782, 788 [250 Cal.Rptr. 730]; *People v. Kingston* (1974) 44 Cal.App.3d 629, 637 [118 Cal.Rptr. 896].) Once the

court grants probation, it has broad discretion under Penal Code section 1203.1 to prescribe reasonable probation conditions to foster rehabilitation and protect the public so that justice may be done. (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Miller* (1989) 208 Cal.App.3d 1311, 1314 [256 Cal.Rptr. 587, 86 A.L.R.4th 703].)[2] An imposed condition, however, must serve a purpose specified in section 1203.1, which has as its major goal the rehabilitation of the criminal. (*People* v. *Richards* (1976) 17 Cal.3d 614, 619-620 [131 Cal.Rptr. 537, 552 P.2d 97]; *People* v. *Scroggins* (1987) 191 Cal.App.3d 502, 505 [236 Cal.Rptr. 569]; *People* v. *Beach* (1983) 147 Cal.App.3d 612, 620 [195 Cal.Rptr. 381].)

This discretion must be exercised in a reasonable manner and is not boundless. "In the first place, the authority is wholly statutory; the statute [Penal Code section 1203.1] furnishes and limits the measure of authority which the court may thus exercise [citations]." (*People* v. *Keller* (1978) 76 Cal.App.3d 827, 832 [143 Cal.Rptr. 184]; *People* v. *Beach, supra,* 147 Cal.App.3d 612, 620.)

■ "A condition of probation [is invalid if it] '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 . . . .) Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People* v. *Lent, supra,* 15 Cal.3d at p. 486, fn. omitted.)

A defendant may refuse probation if the conditions are too harsh. The ability to refuse probation, however, does not bar appellant from accepting it

---

[2]Penal Code section 1203.1 states in pertinent part:

"The court or judge thereof, in the order granting probation, may suspend the imposing, or the execution, of the sentence and may direct that the suspension may continue for a period of time not exceeding the maximum possible term of the sentence, except as hereinafter set forth, and upon those terms and conditions as it shall determine. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"The court may impose and require any or all of the above-mentioned terms of imprisonment, fine, and conditions, and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer, and that should the probationer violate any of the terms or conditions imposed by the court in the matter, it shall have authority to modify and change any and all such terms and conditions and to reimprison the probationer in the county jail within the limitations of the penalty of the public offense involved. . . ."

and then contesting the condition on appeal. (*People* v. *Bauer* (1989) 211 Cal.App.3d 937, 940 [260 Cal.Rptr. 62]; *People* v. *Miller, supra,* 208 Cal.App.3d 1311, 1314.) " 'Conditions of probation which are not authorized by law are severable and do not affect the valid conditions of the order.' [Citation.]" (*People* v. *Narron* (1987) 192 Cal.App.3d 724, 741 [237 Cal.Rptr. 693].)

■    Respondent contends that forfeiture of appellant's truck is a reasonable condition because his truck was directly related to the crime: it contained burglary tools used to cut the trailer chain and appellant presumably intended to link the trailer to the truck and escape with the jet skis. Respondent also notes that appellant refused to acknowledge responsibility for the crime, and forfeiture of the truck served an "effective rehabilitative" purpose: "Therefore, it was necessary for the court to take dramatic measures to compel appellant to accept responsibility for his actions. Otherwise, appellant might associate deviant behavior with inconsequential punishment and continue to engage in further criminal activity. Nothing else could have left a more indelible imprint on appellant concerning the seriousness of his crime than requiring him to forfeit a prized possession in return for his deed." Respondent's argument, if accepted, would equally apply to the most severe and unreasonable conditions because such conditions would also leave "an indelible imprint" of the seriousness of the crime.

Respondent's argument must be rejected. The condition of the forfeiture of the truck must be examined in light of the sentencing court's stated purpose in imposing it: to "hurt" and "punish" appellant for his conduct. The major goal of probation is to rehabilitate the criminal: probation is not a form of punishment. (*People* v. *Morrison* (1980) 109 Cal.App.3d 378, 383 [167 Cal.Rptr. 276]; *People* v. *Richards, supra,* 17 Cal.3d 614, 620.) The record clearly reflects the intent of the sentencing court to impose the condition as a form of punishment, particularly in its choice of ordering forfeiture of the truck rather than the jet ski because forfeiture of the "Ski Doo" would only hurt the creditor rather than appellant.

The condition also fails the test of reasonableness under *Lent.* Appellant's lawful ownership of a truck is conduct which is not itself criminal and not reasonably related to future criminality. The only possible link could be that it relates to the crime of which appellant was convicted because the truck was the vehicle used to arrive at Berglund's house, contained the tools and knives, and presumably would have been used to tow the jet ski trailer. The condition is not reasonable, however, especially considering the fact that the sentencing court actually returned to appellant one of the weapons inside the truck. "[A] reasonable condition of probation is not only fit and appropriate

to the end in view but it must be a *reasonable* means to that end. Reasonable means are moderate, not excessive, not extreme, not demanding too much, well-balanced. [Citation.]" (*People* v. *Keller, supra,* 76 Cal.App.3d 827, 840; *People* v. *Beach, supra,* 147 Cal.App.3d at p. 621, italics in original.) The forfeiture of a lawfully owned vehicle under the facts of this case fails to advance the purpose of the statute and is not reasonable.

## II.

### THE COURT IMPROPERLY IMPOSED RESTITUTION AS A CONDITION OF PROBATION.

On January 2, 1991, the court suspended imposition of sentence and placed appellant on probation for a term of three years imposing certain conditions.

As one of the conditions of probation, the court imposed payment of restitution as follows:

"Defendant shall make restitution in the amount of $400.00 payable as recommended in the Probation Officer's report." The report of the probation officer specifies that payment shall be made, ". . . $50 of this amount to be paid to the Probation Officer within 30 days of his release from custody or being placed on the Work Furlough Program and $50 on a corresponding date of each month thereafter, until the entire amount of $400 has been paid. These amounts are to be paid to the Probation Officer of Tulare County who shall pay such amounts, as received, to the: [¶] Restitution Fund, California State Board of Control—$400."

The court further ordered:

"Defendant shall pay a restitution fine in the sum of $400.00 pursuant to Government Code § 13967 stayed during term of probation after which time it shall become permanent." For clarity and brevity, we will refer to the first monetary order as the "restitution condition of probation" and the second as the "restitution fine order."

Appellant initially argued that the restitution fine order was improperly made payable to the victim pursuant to Government Code section 13967, subdivision (c). After additional briefing, appellant concedes that the restitution fine order was properly made payable to the Restitution Fund pursuant to Penal Code section 1202.4, subdivision (a) and Government Code section 13967, subdivision (a). Appellant and respondent now focus their attention

on the validity of the restitution condition of probation. Before addressing this issue, it is necessary to review the restitution provisions of the Government and Penal Codes.

Penal Code section 1202.4, subdivision (a) requires the imposition of a Government Code section 13967, subdivision (a) restitution fine under the following circumstances: "(a) In any case in which a defendant is convicted of a felony, the court shall order the defendant to pay a restitution fine as provided in subdivision (a) of Section 13967 of the Government Code. Such restitution fine shall be in addition to any other penalty or fine imposed and shall be ordered regardless of the defendant's present ability to pay." Only upon a statement of finding of compelling and extraordinary reasons may the fine be waived. If restitution is ordered as a condition of probation, the order to pay the restitution fine, or a portion thereof, may be stayed pending the successful completion of probation. (Pen. Code, § 1202.4, subd. (b).) "Nothing in this section authorizes the stay of an order of restitution to the victim." (Pen. Code, § 1202.4, subd. (c).)

Government Code section 13967 is designed to compensate crime victims for economic losses suffered as a direct result of a crime. It accomplishes this goal by providing both for restitution fines to the State Restitution Fund and direct restitution payments to victims. (*People* v. *Serna* (1988) 203 Cal.App.3d 728, 730 [249 Cal.Rptr. 861]; *People* v. *Miller* (1989) 216 Cal.App.3d 758, 761 [265 Cal.Rptr. 77].)

If a person is convicted of one or more felony offenses, the court shall impose a restitution fine of no less than $100 and not more than $10,000. In setting the amount of the fine pursuant to subdivision (a) of section 13967, the court shall consider any relevant factor, including the seriousness and gravity and circumstances of the offense, the economic gain derived by the defendant, and the extent to which others suffered losses as a result of the crime, including pecuniary losses and intangible losses such as psychological harm. (Gov. Code, § 13967, subd. (a).) The court has broad discretion in deciding the amount of the fine under subdivision (a) and need not provide a statement of reasons on the record, although the amount of the fine must be supported by the record, including the circumstances set forth in the probation officer's report. (*People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 998, fn. 5 [262 Cal.Rptr. 141].) Subdivision (a) fines are deposited in the Restitution Fund in the State Treasury. Those funds are then made available to victims of crime who file an application for assistance pursuant to Government Code section 13961. (*People* v. *Miller*, *supra*, 216 Cal.App.3d 758, 761; *People* v. *Blankenship*, *supra*, 213 Cal.App.3d 992, 996.) The assessment of a subdivision (a) restitution fine is not dependent on the existence of

an actual victim of the felony offense. (*People* v. *Miller, supra,* 216 Cal.App.3d at pp. 761-762.)

Government Code section 13967, subdivision (a) further provides that the court shall order payment of restitution to the victim in accordance with subdivision (c).

In 1986, subdivision (c) was added to Government Code section 13967 to provide for direct payment of restitution fines to victims, and provided in part:

"(c)   In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, *and the defendant is denied probation,* in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. . . . Notwithstanding subdivision (a), restitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment. . . ." (Italics added.)

Government Code section 13967, subdivision (c) expressly relates only to economic losses, and such fines must be supported by reference to a factual basis for a claim. (*People* v. *Blankenship, supra,* 213 Cal.App.3d 992, 998.) "Restitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim, or victims, for all determined economic losses incurred as the result of defendant's criminal conduct." (Gov. Code, § 13967, subd. (c).) The applicability of this subdivision is dependent upon there being a "victim" of the crime as defined in Government Code section 13960: "A person who sustains injury or death as a direct result of a crime." (Gov. Code, § 13960, subd. (a)(1); *People* v. *Miller, supra,* 216 Cal.App.3d 758, 762.) If there is such a victim, section 13967 permits the court to impose both a restitution fine under subdivision (a) and to order direct restitution under subdivision (c). (*People* v. *Blankenship, supra,* 213 Cal.App.3d 992, 999; *People* v. *Serna, supra,* 203 Cal.App.3d 728, 730-731.)

Appellant and respondent agree that Government Code section 13967, subdivision (c) is inapplicable to the present case because probation was granted. Further, it is not now contended by either party that the restitution fine order provided for payment other than to the Restitution Fund as provided in subdivision (a) of Government Code section 13967.

The remaining issue concerns the validity of the restitution condition of probation, which was specifically ordered payable to the Restitution Fund.

Penal Code section 1203.1 states: "The court shall consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund." "The term 'restitution' or 'reparation' as used in section 1203.1 has been judicially defined to mean 'reimbursement to the victims of crime for actual loss flowing from the charged offense or from related misconduct.' (*People* v. *Baker* (1974) 39 Cal.App.3d 550, 559 . . . .)" (*People* v. *Vournazos* (1988) 198 Cal.App.3d 948, 954 [244 Cal.Rptr. 82].) Penal Code section 1203.04, subdivision (a) requires imposition of restitution as a condition of probation "[i]n every case where a person is convicted of a crime and is granted probation . . . ." Restitution shall be made to the victim, "if the crime involved a victim" (Pen. Code, § 1203.04, subd. (a)(1)) or to the Restitution Fund "if the crime did not involve a victim." (Pen. Code, § 1203.04, subd. (a)(2).) Restitution is statutorily defined "[f]or the purposes of paragraph (1) of subdivision (a)" (i.e., restitution to the victim) as "full or partial payment for the value of stolen or damaged property, medical expenses, and wages or profits lost due to injury or to time spent as a witness or in assisting the police or prosecution, which losses were caused by the defendant as a result of committing the crime for which he or she was convicted. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (Pen. Code, § 1203.04, subd. (d).)

Appellant contends the imposition of victim restitution as a condition of probation is improper because Mr. Berglund did not suffer any economic loss. Appellant argues, and respondent concedes, that in the absence of economic loss, only a restitution fine may be imposed, and the restitution condition of probation must be stricken.

The court's restitution condition of probation provided that payment be made to the Restitution Fund, thus relying on Penal Code section 1203.04, subdivision (a)(2) and implicitly finding that the crime did not involve a victim. Appellant was placed on probation as a result of his no contest plea to count I of the information, grand theft of the personal property of John Berglund (Pen. Code, § 487, subd. 1). A violation of Penal Code section 487, subdivision 1 is not a victimless crime. The phrase "victimless crimes" is a "[t]erm applied to a crime which generally involves only the criminal as in the crime of illegal possession of drugs." (Black's Law Dict. (5th ed. 1979) p. 1405, col. 2.) John Berglund, whose property was stolen, was the victim of appellant's crime. Penal Code section 1203.04, subdivision (a)(2) provides for restitution to the Restitution Fund only "if the crime did not involve a victim." There being a victim, the order of payment to the Restitution Fund was improper. The victim Berglund having suffered no loss for which restitution is appropriate under subdivision (d) of Penal Code section 1203.04, restitution cannot be ordered payable to him.

■ Thus, under the language of Penal Code section 1203.04 where, as here, the crime results in a victim but that victim does not suffer or fails to claim any compensable loss, an order of restitution to either the victim or the Restitution Fund is improper and no condition of probation providing for restitution may be made under the express language of the statute. In the present case, the restitution condition of probation must be stricken.

Appellant does not, however, get off the hook. The court, pursuant to Penal Code section 1202.4, subdivision (b), stayed the restitution fine order.

"In any case in which the defendant is ordered to pay restitution as a condition of probation, the order to pay the restitution fine, or portion thereof, may be stayed pending the successful completion of probation, and thereafter the stay shall become permanent." (Pen. Code, § 1202.4, subd. (b).)

Since we will vacate the restitution condition of probation, the basis for the stay of the restitution fine order is removed and the stay must be lifted.

Because in the present case the restitution condition of probation must be stricken, we do not reach appellant's further contentions pertaining to the appropriateness of the trial court's order imposing both a restitution fine and restitution as a condition of probation.

## DISPOSITION

The matter is remanded to the trial court with directions to strike the conditions of probation (1) ordering forfeiture of appellant's Nissan pickup truck, and (2) imposing $400 restitution. The trial court is further directed to vacate the stay of the ordered Government Code section 13967 restitution fine. The trial court is directed to clarify its disposition as to count II and to prepare, accordingly, an amended abstract of judgment. In all other respects the judgment is affirmed.

Best, P. J., and Vartabedian, J., concurred.